tled that a receipt is not one of those solemn papers in writing as to which parol testimony is not admissible, but is always capable of explanations. *Heath* v. *Steele*, 9 S. C., 92; *Moffatt* v. *Hardin*, 22 S. C., 27.

"But even if James Catoe had actually returned the money advanced at the sheriff's sale, and directed the deed executed to his son, John E. Catoe, as it seems to us, the law would not allow him to raise a resulting trust against said son, but assume that it was intended as an advancement, especially after the son was allowed to hold himself out to the world, for a series of years, as the legal owner of the land. 'If, therefore, a purchase of either real or personal property is made by a * * * father in the name of his legitimate child, * * * no trust results in favor of the * * * father, but the transaction is presumed to be a gift or advancement to or for the benefit of the * * * child.' 2 Pom. Eq. Jur., § 1039."

OPINION by MR. JUSTICE McGOWAN, March 18, 1890. *R. E. & R. B. Allison*, for appellant. *Ernest Moore*, contra.

No. 2584. BURNETT v. GENTRY. November Term, 1889. The defendant, as sheriff, levied and sold property of this plaintiff and applied proceeds to the satisfaction of a senior judgment, leaving in his hands a balance, which was claimed by one Davis, who had an execution, not marked satisfied, in the sheriff's office.

Burnett went to see the sheriff, but had no receipt, and made no satisfactory showing that the execution had been paid; and Davis denying that the judment had been paid, and demanding the money, the sheriff, after waiting some time, paid the money to Davis. Thereupon plaintiff brought this action to recover this balance, and obtained judgment in the court below under the charge of the trial judge, Hudson.

On appeal this judgment was reversed, the court holding that a sheriff who *bona fide* applies proceeds of official sales to the senior execution in his office, regular on its face, open, and nothing about it to indicate that it is either void or had been paid, cannot be held liable for a misappliance even if it should afterwards appear that it was, in fact, then paid by a private settlement between the parties.

The court say : "We are not able to see that the sheriff could

have protected himself on a rule from Davis.    Under those circumstances what was the sheriff to do?    Was it his official duty to arbitrate between these parties, and that, too, at the risk of deciding wrong, and thereby making himself liable?    Was he, with a plain mandate of the court in his hands, required, in a collateral manner, to decide what it was the duty of the defendant in execution to have had decided directly, not only for his own benefit, but also to disembarrass the sheriff?    We cannot think so.    Where judgment is recovered and execution issued, the proper place to pay it is in the sheriff's office, where the proper entries can be made.    And it seems to us that where a defendant in execution undertakes to settle out of the office, he must at least file satisfactory evidence there that he has paid the debt, or take some legal proceedings to have it marked "satisfied."    Until that was done, or something equivalent to it, the sheriff, as it seems to us, could only discharge his duty by proceeding to carry into effect the peremptory mandate of the court contained in the execution delivered to him.

"It is undoubtedly the duty of a sheriff to pay the executions in his office according to their priorities as determined by the time of entry.    We suppose that he would be excused for passing over one open in his office, if it was certainly known to have been paid in full; but even then it would be at his risk.    But we cannot resist the conviction that every execution remaining open in his office is presumed to be, as it appears, unpaid and unsatisfied, at least until it is clearly shown that it has been paid in a private settlement between the parties, and that the court is bound to protect the sheriff, a ministerial officer, in all that he has done under it, regularly and in good faith, before it is established that such out-door settlement had in fact been made."    Opinion by Mr. Justice McGowan, March 20, 1890.    *Nicholls & Moore*, for appellant.    *Stanyarne Wilson*, contra.

No. 2595.    Tyer *v.* Charleston Rice Milling Company.    November Term, 1889.

Pending an action for foreclosure given to plaintiffs as executors, the owners of the property advertised it for sale at auction, whereupon an order was passed directing such sale to proceed, and declaring how the proceeds should be applied, and further